## BELL, HARRIS & CO. *v.* HANNAH & OWEN.

1. PRINCIPAL AND AGENT. *Rights and duties of factors.* Where the consignment is made generally, without any specific orders as to the time or mode of sale, and the factor makes advances, or incurs liabilities, on the footing of such consignment, then the legal presumption is, that the factor is intended to be clothed with the ordinary rights of factors to sell, in the exercise of a sound discretion, at such time and in such mode as the usages of trade and his general duty require, and to re-imburse himself for his advances and liabilities out of the proceeds of sale, and the consignor has no right, by any subsequent orders given after advances have been made, or liabilities incurred by the factor, to suspend or control this right of sale, except so far as respects the surplus of the consignment, not necessary for the re-imbursement of such advances or liabilities, though the consignor has not refused to pay or secure the advances made by the consignee.

Case cited: Brown & Co. *v.* McGraw, 14 Pet., 607–8.

2. CHARGE OF COURT. *Exceptions to. Must be taken. When.* Where the charge of the Court is not as full as desired, the parties are bound to ask for such additional matter as is desired, otherwise no reversal can be had upon this ground. The Court say: "We must see error in what was charged, something calculated to mislead the jury, before we can reverse."

---

### FROM WILSON.

---

Appeal from the Circuit Court. B. J. TARVER, Special Judge.

JORDAN and JAMES F. STOKES for Bell, Harris & Co.

A. B. MARTIN for Hannah & Owen.

FREEMAN, J., delivered the opinion of the Court.

Plaintiff sued for balance of account claimed to be due for money advanced to defendants, amounting to $1,523 61. The plaintiffs were commission merchants in New Orleans, in 1867, and as such had a large consignment of tobacco belonging to defendants turned over to them for sale, from the house of C. S. Stewart & Co., in said city, and also shipments made to them from Tennessee, the residence of defendants. The advances seem to have been made from the 2d of May, 1867, to the 25th of June. Defendants denied the indebtedness by general pleas, the first of set-off, claiming an amount due them over and above the amount claimed by plaintiff, and judgment for this excess. The second is in the nature of a cross action for damages. It alleges, in substance, that the plaintiffs were commission merchants in New Orleans; that defendants consigned to them for sale upwards of one hundred and five hogsheads of tobacco; that plaintiffs were bound by this contract, and also by their relation as agent and commission merchants, to make a judicious sale, to secure the highest market price, and to use the highest diligence in the cure, disposition, and sale of the tobacco, which contract, whether expressed or implied, they have not performed, but failed to sell for the highest price, and by negligence and inattention to their duties as agents and merchants, and failure to make a judicious sale, the defendants were damaged $5,000, whereupon they pray judgment, etc.

On these pleas issues were taken, and trial had,

Bell, Harris & Co. *v.* Hannah & Owen.

which resulted in a verdict for plaintiffs for the amount of their account, but also a finding for the defendants by way of damages for a larger amount, and judgment for the excess in their favor, from which judgment the plaintiffs appealed to this Court.

We think the last plea above referred to presents the issue that the plaintiffs were by their contract, and as commission merchants, under which they received the tobacco, and also by reason of the fact that they were agents of the defendants, bound to sell the tobacco for the best price, and to use proper dilligence in effecting a sale, and taking the whole plea together, that an express contract is alleged, as well as the implied one arising out of the relation of the parties, by the breach of which contract, the defendants were damaged. The plea is not as clear and specific as it might have been, perhaps is liable to the objection of duplicity in presenting an express, as well as an implied contract, as the bases of recovery, but no objection having been taken to it in the Court below, none can be taken here. Numerous objections are taken to the charge of the Special Judge who tried the case, some of which we deem it proper to notice, others not.

It is said that the charge is too long, not clearly expressed, has much repetition, etc., in it, and was calculated to mislead the jury, and did not give a full statement of the law on the questions.

We need but say, that, on examination of the charge, we do not find these criticisms, in our judg-

ment, sustained, at any rate, to the extent urged by counsel. While there may be, in some few matters, some verbal inaccuracy of statement, and not as clearly stated as might be, yet, in the main, the charge is correct in principle. If it was not as full as desired, on long settled principles, the plaintiffs were bound to ask for such additional matter as was desired. Failing to do this, they can not ask a reversal on this ground. We must see error in what was charged, something calculated to mislead the jury, before we can reverse. It is objected, that the Court told the jury that a commission merchant is bound to the utmost good faith "towards his principal in the transaction of his business." This is certainly correct, and any breach of good faith, from which an injury should arise, would subject him to liability for damage thus sustained.

Without, however, noticing minor objections made to the charge, we come to the question presenting the real difficulty in the case. His Honor, after instructing the jury as to the effect of a special contract between the parties, proceeds to give the rules of law applicable to a different state of facts, on the assumption that no special contract existed. He says, "It is alleged by plaintiffs that they made advances for defendants, and made sales of the tobacco to cover those advances. You will look to the proof, and from it determine whether they did make them or not." In the event that no special contract was found in relation to the advances, he instructs the jury "that the plaintiffs would have the right to sell so much of the

tobacco of defendant as would cover the advances. But they could not make such a sale below the market price. They would not be justified in making a sale below the market price, or forced sale, unless the defendants had refused to pay or secure the advances or acceptances on demand made, and unless the plaintiffs had carefully sought to protect the defendants' interest in the time and manner of the sale." It is proper to say, that it was attempted to be shown by the plaintiffs that they sold at an unseasonable time to reimburse advances made and bills drawn on the tobacco.

We need not decide how the fact was, it is sufficient that the question was one submitted to the jury on the evidence before them. It was also contended by the plaintiffs that they had no special contract to hold the tobacco, or instructions to that effect. The question is, was the above charge of his Honor, the law, in view of the above issues between the parties.

While the commission merchant would be bound, by reason of his position, to sell the property consigned to him, at highest market price which he could obtain, by the exercise of reasonable diligence, and such activity and skill as properly belong to one assuming the character of such factor in such a market as he had undertaken to make the sale in, whether he sold to repay advancements, or sold simply in pursuance of his agency, and would be responsible for failure to do this to the extent of the damages resulting. Still, the question is, as to the correctness of the other qualifi-

cation stated, in case of sale to meet advances, that is, he could not make a forced sale, unless the defendant had refused to pay or secure the advances or acceptances on demand made.

The rules governing the relation of factor and his principal are thus laid down by Judge Story, in delivering the opinion of the Supreme Court of the United States in the case of *Brown & Co.* v. *McGraw*, 14 Pet., 607, Curt. Ed. He says: " Whenever a consignment is made to a factor for sale, the consignor has a right, generally, to control the sale thereof, according to his own pleasure, from time to time, if no advances have been made or liabilities incurred on account thereof, and the factor is bound to obey his orders. This arises from the ordinary relation of principal and agent. If, however, the factor makes advances, or incurs liabilities on account of the consignment, by which he acquires a special property therein, then the factor has a right to sell so much of the consignment as may be necessary to re-imburse such advances, or meet such liabilities, unless there is some existing agreement between himself and the consignor, which controls or varies the right. Thus, for example, if contemporaneous with the consignment, and advances or liabilities incurred, there are orders given by the consignor, which are assented to by the factor, that the goods shall not be sold until a fixed time, in such case the consignment is presumed to be received by the factor subject to such orders, and he is not at liberty to sell the goods to re-imburse his advances, or liabilities, until that time has elapsed.

Bell, Harris & Co. *v.* Hannah & Owen.

The same rule will apply to orders not to sell below a fixed price, unless, indeed, the consignor shall, after due notice and request, refuse to provide any other means to re-imburse the factors, and in no case will the factor be at liberty to sell the consignment contrary to the orders of the consignor, although he has made advances, or incurred liabilities thereon, if the consignor stands ready, and offers to re-imburse and discharge such advances and liabilities."

It will be seen from the above statement of the rights of the parties, that his Honor, the Circuit Judge, was applying the rules of law in cases of a factor acting under instructions or limitations by a contract, as to the price for which the consignment is to be sold, or the time at which the factor might sell, to the other kind of case, when no contract exists, nor limitations upon his general powers.

The law as to this latter case is thus laid down by Mr. Story in the above case, p. 608. On the other hand, where the consignment is made generally, without any specific orders as to the time or mode of sale, and the factor makes advances, or incurs liabilities on the footing of such consignment, then the legal presumption is, that the factor is intended to be clothed with the ordinary rights of factors to sell in the exercise of a sound discretion, at such time and in such mode as the usages of trade and his general duty require, and to re-imburse himself for his advances and liabilities out of the proceeds of sale; and the consignor has no right, by any subsequent orders given

after advances have been made, or liabilities incurred by the factor, to suspend or control this right of sale, except so far as respects the surplus of the consignment, not necessary for the re-imbursement of such advances or liabilities."

We have thus given, in these extracts, what we consider the sound rules of this question, from which it is obvious the Circuit Judge erred in his instructions on this branch of the case. The error is not one on a mere abstract question, not raised by the issues presented on the testimony before the jury, and being calculated to mislead the jury, compels a reversal of this case. As the case must go back for a new trial, it is proper to notice an error in refusing to admit testimony offered to be presented by the defendants. They offered to prove that Bell, Harris & Co. agreed to meet their bills, then maturing, drawn on Stewart & Co., without selling the tobacco for said purpose, and that the tobacco was transferred from Stewart & Co. in accordance with this agreement. This testimony should have been admitted, as it tended to show, in connection with the other proof, that plaintiffs had violated their special agreement by a sale on a depressed market, to the injury of defendants.

Without discussion of other questions raised, the result is, the case must be reversed, and remanded for another trial.